UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC., <br><br> Plaintiff, <br><br> v. <br><br> U.S. DEPARTMENT OF JUSTICE, <br><br> Defendant. | Case No. 17-cv-0916 (CRC) |

## MEMORANDUM OPINION

This case involves another request made under the Freedom of Information Act ("FOIA") for documents concerning the infamous "Trump Dossier," a "collection of memoranda prepared by former British intelligence operative Christopher Steele during the 2016 presidential election concerning then-candidate Donald J. Trump." James Madison Project v. Dep't of Justice, 2018 WL 294530, at *1 (D.D.C. Jan. 4, 2018), *appeal docketed* (Jan. 25, 2018). Judicial Watch, Inc. submitted a FOIA request to the Federal Bureau of Investigation for documents related to the FBI's relationship with Mr. Steele. When the FBI failed to timely respond, Judicial Watch filed suit. The FBI ultimately refused to confirm or deny the existence of any such documents, issuing a so-called "*Glomar* response." Both parties have now moved for summary judgment. Because the FBI's *Glomar* response was proper and Judicial Watch has failed to carry its burden to show public acknowledgment of the requested documents, the Court will grant the Department's motion and deny Judicial Watch's.

### I. Background

As reported extensively by the media, during the 2016 election former British intelligence operative Christopher Steele compiled a 35-page dossier on then-candidate Donald Trump. James Madison Project, 2018 WL 294530, at *1. The dossier allegedly includes

"allegations that the government of Russia possesses compromising personal and financial information about President Trump." Id. The question of who commissioned and paid for the Trump Dossier has been a subject of much contention in media and political circles.

On February 28, 2017, the *Washington Post* reported that the FBI had once intended to pay Steele to continue looking into ties between then-candidate Trump and the Russian government.[1] The story concluded that the FBI did not pay Steele and noted that the FBI declined to comment on the report. Eight days later, on March 8, 2017, plaintiff Judicial Watch, Inc. filed a FOIA request with the FBI seeking three categories of documents related to the *Post* story:

1. Any and all records of communication between any official, employee, or representative of the FBI and Steele.

2. Any and all records regarding, concerning, or related to the proposed, planned, or actual payment of any funds to Steele and/or his company Orbis Business Intelligence.

3. Any and all records produced in preparation for, during, or pursuant to any meetings or telephonic conversations between any official, employee, or representative of the FBI and Steele and/or any employee or representative of his company Orbis Business Intelligence.

Hardy Decl. Ex. A, at 1.

When the FBI failed to respond to this request in a timely fashion, Judicial Watch filed suit under FOIA against the Department of Justice, the parent agency of the FBI. See Compl. ¶¶ 7, 11. That same day, on May 16, 2017, the FBI issued a letter that asserted a *Glomar*

---

[1] See Tom Hamburger & Rosalind S. Helderman, *FBI Once Planned to Pay Former British Spy who Authored Controversial Trump Dossier*, Wash. Post (Feb. 28, 2017), https://www.washingtonpost.com/politics/fbi-once-planned-to-pay-former-british-spy-who-authored-controversial-trump-dossier/2017/02/28/896ab470-facc-11e6-9845-576c69081518_story.html?utm_term=.db8d68d38f3c.

response to Judicial Watch's request, refusing to confirm or deny the existence of any responsive documents on the basis of six separate FOIA exemptions. Hardy Decl. Ex. C, at 1. The parties subsequently filed briefs for summary judgment.

## II. Legal Standard

Congress enacted FOIA "to promote the 'broad disclosure of Government records' by generally requiring federal agencies to make their records available to the public on request." DiBacco v. U.S. Army, 795 F.3d 178, 183 (D.C. Cir. 2015) (citation omitted). But Congress also recognized that legitimate governmental and privacy interests could be harmed by the release of documents and thus carved out nine exemptions from FOIA's reach. See 5 U.S.C. § 552(b). These exemptions are to be narrowly construed, and the agency has the burden of justifying any withholding it makes. DiBacco, 795 F.3d at 183–84.

The courts have also recognized that "[i]n certain cases, merely acknowledging the existence of" records responsive to a FOIA request "would itself 'cause harm cognizable under [a] FOIA exception.'" People for the Ethical Treatment of Animals v. NIH ("PETA"), 745 F.3d 535, 540 (D.C. Cir. 2014) (citation omitted) (second alteration in original). When such situations arise, an agency may refuse to confirm or deny the existence of any responsive records by issuing what is known as a "*Glomar* response." Id.[2] A *Glomar* response is appropriate "if the fact of the existence or nonexistence of agency records falls within a FOIA exception." Id. (citation omitted). In assessing the validity of a *Glomar* response, the Court can rely on agency affidavits. Id.

---

[2] This name is derived from the CIA's refusal to confirm or deny records related to the *Hughes Glomar Explorer*, a ship used in a classified CIA project to raise a sunken Soviet submarine for U.S. intelligence analysis. PETA, 745 F.3d at 540.

An agency may not issue a *Glomar* response, however, if it has already publicly acknowledged the existence of the records sought. American Civil Liberties Union v. CIA ("ACLU"), 710 F.3d 422, 427 (D.C. Cir. 2013). A plaintiff bears the burden of proving such public acknowledgment. Id. To meet this burden, a plaintiff in a *Glomar* case "must pinpoint an agency record that both matches the plaintiff's request and has been publicly and officially acknowledged by the agency." Moore v. CIA, 666 F.3d 1330, 1333 (D.C. Cir. 2011); see also James Madison Project, 2018 WL 294530, at **5–6 (continuing to apply this specificity requirement after the D.C. Circuit's decision in ACLU).

### III. Analysis

The FBI has asserted six separate FOIA exemptions that it contends justifies its *Glomar* response.[3] Judicial Watch does not challenge the applicability of any of these exemptions, except for a brief argument that the Department has failed to "demonstrate the production of the records could reasonably be expected to interfere with law enforcement proceedings." Pl.'s Mem. P. & A. Opp'n Def.'s Mot. Summ. J. ("Pl.'s MSJ") at 5. Even if that were so, at least three of the six exemptions asserted—Exemptions 1, 3, and 6—do not require that the release of documents would interfere with ongoing investigations. See 5 U.S.C. § 552(b)(1), (3), (6). In

---

[3] The six exemptions are: Exemption 1 (which protects classified documents), Exemption 3 (which protects documents exempted from disclosure by certain statutes), Exemption 6 (which protects personnel and similar files whose disclosure would constitute an unwarranted invasion of personal privacy), Exemption 7(A) (which protects law enforcement records whose disclosure would interfere in an ongoing enforcement proceeding), Exemption 7(C) (which protects law enforcement records whose disclosure would constitute an unwarranted invasion of personal privacy), and Exemption 7(D) (which protects law enforcement records whose disclosure could be expected to disclose the identity of a confidential source). Hardy Decl. ¶ 14; see 5 U.S.C. § 552(b).

any event, the Department has provided a detailed affidavit from an FBI employee that sufficiently justifies all of the asserted exemptions.  See generally Hardy Decl.

Instead, Judicial Watch mainly argues that the FBI has publicly acknowledged the requested records' existence, thereby defeating its *Glomar* response.  Pl.'s MSJ at 3–5.  As evidence of public acknowledgment, Judicial Watch points exclusively to an October 21, 2017 tweet from President Trump's personal Twitter account that reads: "Officials behind the now discredited 'Dossier' plead the Fifth.  Justice Department and/or FBI should immediately release who paid for it."  Pl.'s MSJ at 4.  Judicial Watch argues that this tweet acknowledged the existence of records responsive to its FOIA request.  Id. at 4–5.[4]

As noted, a plaintiff must "pinpoint an agency record that both matches the plaintiff's request and has been publicly and officially acknowledged by the agency."  Moore, 666 F.3d at 1333.  Clearly, this tweet does not publicly and officially acknowledge the existence of *any* documents related to the first and third parts of Judicial Watch's FOIA request—which sought records of communication between the FBI and Mr. Steele and records produced in preparation for any meetings or conversations between the FBI and Mr. Steele, see Hardy Decl. Ex. A.  The tweet makes no reference to any meetings or communications between the FBI and Steele.  As such, it does not constitute a public acknowledgment of the existence of any documents within the scope of the first and third parts of Judicial Watch's request.

Nor does it constitute an official acknowledgment of any documents within the scope of the second part of Judicial Watch's request, which seeks documents related to "the proposed,

---

[4] While the public acknowledgment must come from the specific agency the FOIA request is made to, the D.C. Circuit has stated that an acknowledgment of records' existence by a parent agency—such as the President as head of the Executive Branch—is imputed to its component agencies.  See ACLU, 710 F.3d at 429 n.7.

planned, or actual payment of any funds to Mr. Steel and/or Orbis Business Intelligence," Hardy Decl. Ex. A, at 1. Given the *Washington Post* story that inspired Judicial Watch's FOIA request, the FBI has consistently and reasonably interpreted that request as seeking documents related to payments *by the FBI* to Mr. Steel or his company. See Hardy Decl. ¶¶ 19–21, 41; Def.'s Mem. P. & A. Supp. Mot. Summ. J. at 7–8; Def.'s Mem. Opp'n Pl.'s Cross-Mot. Summ. J. at 4–5. Judicial Watch has never contested this characterization of its FOIA request before the FBI or in this Court. While the President's tweet could arguably suggest that the FBI has some records concerning who paid for the Trump Dossier, it does not acknowledge that there are records that *the FBI* paid for it. Because Judicial Watch must point to a public acknowledgment of the specific records it seeks, see, e.g., Moore, 666 F.3d at 1333, this tweet is insufficient to constitute public acknowledgment.

Since there has been no public acknowledgment of the existence of any specific records responsive to Judicial Watch's request (as reasonably construed by the FBI), the FBI's assertion of a *Glomar* response was appropriate in this case. The Court will therefore grant the Department's motion for summary judgment and deny Judicial Watch's cross motion. A separate Order shall accompany this Memorandum Opinion.

CHRISTOPHER R. COOPER  
United States District Judge

Date: <u>February 5, 2018</u>